United States District Court
Southern District of Texas
**ENTERED**
September 04, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | § | |
| COMPLAINT OF MARQUETTE | § | |
| TRANSPORTATION COMPANY | § | |
| GULF-INLAND LLC, as owner of the | § | CIVIL ACTION NO. 3:18-CV-00074 |
| M/V CORPUS CHRISTI, FOR | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Marquette Transportation Company Gulf-Inland, LLC's Opposed Motion to Transfer Venue ("Motion to Transfer Venue"). Dkt. 13. All dispositive pretrial motions in this case were referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 35. Having considered the motion, response, reply, and applicable law, the Court RECOMMENDS that Marquette's Motion to Transfer Venue be GRANTED and the case be TRANSFERRED to the United States District Court for the Western District of Kentucky.

### BACKGROUND

Marquette Transportation Company Gulf-Inland, LLC ("Marquette") owns the M/V Corpus Christi. Robert McCoun ("McCoun") claims that he sustained personal injuries in November 2017 while working as a deckhand for Marquette on a barge attached to the M/V Corpus Christi. In December 2017, McCoun filed a lawsuit against Marquette in the 56th District Court of Galveston County, Texas, asserting claims for negligence under the Jones Act, 46 U.S.C. § 30104, and unseaworthiness, maintenance,

and cure under general maritime law.  Marquette answered the Texas state court action and then instituted this case in the United States Southern District of Texas—Galveston Division, seeking (1) exoneration from or limitation of liability associated with McCoun's injuries under the Limitation of Liability Act; and (2) a declaration that a valid and enforceable forum selection clause mandates that the limitation action be sent to the United States District Court for the Western District of Kentucky.  McCoun filed a counterclaim in the federal lawsuit, alleging that Marquette failed to provide a seaworthy vessel, proximately causing his personal injuries.

Marquette has filed a Motion to Transfer Venue, arguing that this action should be transferred out of the Southern District of Texas because "McCoun knowingly and voluntarily signed a document titled 'Venue Selection Agreement,' which required that all claims brought against Marquette must be filed in either federal or state court of Paducah, Kentucky."[1]  Dkt. 13 at 2.  The Venue Selection Agreement specifically states:

> In consideration for Marquette Transportation Company Gulf-Inland, LLC ("Marquette") considering a prospective employee's application and conditionally offering an employment opportunity, the later payment of wages and benefits and the payment of maintenance, cure and advances

---

[1] Many folks across this great country might not be familiar with Paducah, Kentucky.  As a public service, the Court provides some basic background information about this relatively small community first settled as Perkin in 1821 and renamed Paducah in 1827 by William Clark (of the famed Lewis & Clark expedition).  Paducah is located in the far western part of Kentucky at the confluence of the Tennessee and Ohio rivers, halfway between St. Louis and Nashville.  Approximately 25,000 men, women, and children reside in Paducah.  Designated by UNESCO as a Creative City of Crafts and Folk Art, the city is home of the National Quilt Museum and, as the local convention and visitor's bureau likes to boast, "a haven for creative thinkers and doers who find inspiration here."  There is a laundry list of famous people who grew up in Paducah, including Alben W. Barkley (the 35th Vice President of the United States during the presidency of Harry S. Truman), John Scopes (the teacher accused for teaching the theory of evolution in the legendary Scopes trial) and PGA golfer Kenny Perry.  Saving the best for last, Paducah is also the corporate headquarters for Dippin' Dots, a favorite treat of this judge and his family.

> against lost wages should an employee suffer a work-related personal injury and Marquette either determines or is found to have the legal duty to make such payments, all parties agree that any legal action seeking relief for a covered dispute must be filed in either (1) the United States District Court for the Western District of Kentucky, or (2) the McCracken County Circuit Court of Paducah, Kentucky.

Dkt. 4-1. The Venue Selection Agreement defines a "covered dispute" to include "all matters directly or indirectly related to [McCoun's] . . . employment . . . including, but not limited to, . . . personal injury claims/Jones Act claims or tort claims of any type, against Marquette . . . ." *Id.*

## LEGAL FRAMEWORK

The Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501 *et seq.* (the "Limitation Act") allows a vessel owner to limit its liability for damage or injury occasioned without the owner's privity or knowledge to the value of the vessel or the owner's interest in the vessel. A limitation action essentially establishes a limited fund equal to the value of the vessel and consolidates all potential claims before one federal district court. *See Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 446 (2001). Because the Supreme Court found the Limitation Act to be "incapable of execution" without further instructions to the courts, the Supreme Court promulgated procedural rules to govern limitation actions. *See id.* at 447 (citing *Norwich N.Y. Transp. Co. v. Wright,* 80 U.S. 104, 123 (1871)). The procedure for a limitation action is now contained in Supplemental Admiralty and Marine Claims Rule F.

Rule F(9) governs the proper venue for a limitation proceeding. It provides, in pertinent part:

> The complaint shall be filed in any district in which the vessel has been attached or arrested to answer for any claim with respect to which the plaintiff seeks to limit liability; or if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim. When the vessel has not been attached or arrested to answer the matters aforesaid, and suit has not been commenced against the owner, the proceedings may be had in the district in which the vessel may be, but if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district.

FED. R. CIV. P. SUPP. R. F(9).

"The rule makes clear that if the owner has been sued with respect to any claim to which the plaintiff seeks to limit liability, the limitation complaint must be filed in the district in which the owner has been sued." *In re Complaint of the Tug of Danielle M. Bouchard Corp.*, No. CIV.A 98-0485, 1998 WL 164849, *2 (E.D. La. Apr. 7, 1998). *See also In re Am. River Transp. Co.*, 864 F. Supp. 554, 556 (E.D. La. 1994) ("[B]ecause [a claimant] filed a claim against the vessel owners in Texas State court, the appropriate venue is the [district court encompassing the location of the state court]").

After a vessel owner files a limitation complaint, Rule F(9) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district[.]" FED. R. CIV. P. SUPP. R. F(9). The Rule F(9) transfer provision is similar to and analyzed under the same framework as the general transfer provision found under 28 U.S.C. § 1404(a). *See In the Matter of the Complaint of Weeks Marine, Inc.*, No. 16-1463, 2016 WL 3410166, at *2 (D.N.J. June 14, 2016). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a

transfer.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

In a typical case without a forum-selection clause, district courts exercising that discretion must examine a collection of private and public factors.[2] *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum." *See Atl. Marine Const. Co.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). As the United States Supreme Court observed:

> [A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.  When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .
>
> As a consequence, a district court may consider arguments about public-interest factors only . . . . Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.  Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," *Stewart*, [487 U.S. at 30–31], such cases will not be common.

---

[2] The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

*Atl. Marine Const. Co.*, 571 U.S. at 64.  "[I]n the light of present-day commercial realities and expanding international trade . . . [a] forum[-selection] clause should control absent a strong showing that it should be set aside."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

## ANALYSIS

### A.    The Forum-Selection Clause Controls.

McCoun contends that a district court deciding whether to transfer a case for convenience should look at the private and public interest factors, and blithely asserts that "all of the private interest factors" in this case "weigh *heavily* against transfer."  Dkt. 19 at 11 (emphasis included).  Such an argument conveniently ignores the Supreme Court's pronouncement that the parties' private interests are *not* be considered when there is a forum-selection clause involved.  *See Atl. Marine Const. Co.*, 571 U.S. at 64.  As the Fifth Circuit has explained: when the parties hold a valid forum-selection clause, "the district court cannot independently weigh[] the parties' private interests, but must deem such interests to weigh in favor of the preselected forum, the parties having struck that balance by their selection contract."  *In re Rolls Royce Corp.*, 775 F.3d 671, 678 (5th Cir. 2014).  This approach is understandable given that the "enforcement of valid forum-selection clauses, bargained for by the parties, protects [the parties'] legitimate expectations and furthers vital interests of the justice system."  *Atl. Marine Const. Co.*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 33) (Kennedy, J., concurring)).  To put it as concisely as possible: "For cases where all parties signed a forum selection contract, the

analysis is easy: except in a truly exceptional case, the contract controls." *In re Rolls Royce Corp.*, 775 F.3d at 679. This is a case in which the forum-selection agreement controls.[3]

In trying to convince the Court not to transfer this case, McCoun argues that a federal court in Galveston, Texas is more likely to understand Jones Act issues than a federal court in Paducah, Kentucky, presumably because Galveston is located on the Gulf of Mexico. At first blush, that might seem to be a reasonable assumption, but many people will be surprised to learn that Western Kentucky possesses one of the largest concentration of major navigable rivers in the world, making the region a major source of water traffic. Paducah sits at the point where the Tennessee and Ohio Rivers meet, is only fifty miles upstream from the confluence of the Ohio and Mississippi Rivers and approximately twenty miles downstream from the union of the Cumberland and Ohio Rivers. Given Western Kentucky's role as a major hub for inland river activity, any suggestion that the federal courts there are unfamiliar with maritime law is spurious and unsupported. Indeed, a simple Westlaw search reveals that the Paducah Division of the Western District of Kentucky routinely handles Jones Act cases. *See e.g. Weatherly v. ACBL River Operations, LLC.*, No. 5:16-CV-149-TBR, 2018 WL 1702537 (W.D. Ky. Apr. 6, 2018) (involving claims for negligence and maintenance and cure under the Jones Act); *Walls v. Crounse Corp.*, No. 5:15-CV-00058-TBR, 2017 WL 927618 (W.D. Ky. Mar. 8, 2017) (involving a negligence claim under the Jones Act); *Scarborough v.*

---

[3] Although the agreement McCoun signed is titled a "Venue Selection Agreement" rather than a "Forum-Selection Agreement," there is no difference in meaning between the two terms. *See All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008).

*Ingram Barge Co.*, No. 514CV00080GNSLLK, 2016 WL 6901693, at *1 (W.D. Ky. Jan. 8, 2016) (same).

**B.     The Federal Employers Liability Act's Prohibition on Forum-Selection Clauses Does Not Apply to Jones Act Claims.**

McCoun next contends that the forum-selection clause at issue in this case is unenforceable because the Jones Act incorporates a section of the Federal Employers Liability Act ("FELA") that prohibits forum-selection clauses. *See Boyd v. Grand Trunk W. R. Co.*, 338 U.S. 263, 264–65 (1949) ("We agree with those courts which have held that contracts limiting the choice of venue are void as conflicting with [FELA].").

The Jones Act provides a cause of action for maritime workers injured by an employer's negligence.  Although the Jones Act "provid[es] that a seaman should have the same right of action as would a railroad employee, [that] does not mean that the very words of the [FELA] must be lifted bodily from their context and applied mechanically to the specific facts of maritime events." *Cox v. Roth*, 348 U.S. 207, 209 (1955).

In *Terrebonne v. K-Sea Transp. Corp.*, the Fifth Circuit held that FELA's venue provision and accompanying case law (including the case law prohibiting forum-selection clauses) did not apply to Jones Act lawsuits.  477 F.3d 271, 281–82 (5th Cir. 2007). Because the Jones Act had its own venue provision, the Fifth Circuit found that the Jones Act could not be interpreted as incorporating FELA's venue provision.  *Id.* at 282 (Because "the venue provisions . . . of the FELA are inapplicable to Jones Act cases, it necessarily follows that nothing in [FELA's venue provision] is applicable to Jones Act venue.").  As a result, the law after *Terrebonne* was clear: forum-selection agreements

involving domestic seamen were enforceable under the Jones Act. *See Great Lakes Dredge & Dock Co., LLC v. Larrisquitu*, No. H-06-3489, 2007 WL 2330187, *23 (S.D. Tex. Aug. 15, 2007).

This story does not end there. In 2008, Congress decided to repeal the venue provisions of the Jones Act. *See* National Defense Authorization Act for Fiscal Year 2008, Pub.L. No. 110–181, § 3521, 122 Stat. 3, 596 (2008). McCoun argues that "[t]his repeal leaves the Jones Act without its own venue provision, thereby effectively nullifying the Fifth Circuit's 2007 attempt to make a distinction between the venue provisions of FELA and the Jones Act." Dkt. 19 at 5. As a result, McCoun argues, the current Jones Act incorporates FELA's venue provisions, making forum-selection clauses impermissible.

McCoun's argument is creative, but it finds absolutely no support in the caselaw. A number of jurisdictions have considered and rejected the notion that FELA's venue provision—and corresponding prohibition against forum-selection clauses—now applies to the Jones Act in light of the repeal of the Jones Act's venue provision. *See Brister v. ABCL River Operations, LLC*, No. CV 17-6035, 2018 WL 746390 (E.D. La. Feb. 7, 2018); *Riley v. Trident Seafoods Corp.*, No. CIV. 11-2500 (MJD/AJB), 2012 WL 245074 (D. Minn. 2012); *Utoafili v. Trident Seafoods Corp.*, No. 09-2575 SC, 2009 WL 6465288 (N.D. Cal. 2009); *In re OSG Ship Mgmt., Inc.*, 514 S.W.3d 331 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The *Utoafili* court examined the legislative history behind the 2008 repeal of the Jones Act venue provision:

> If Congress had intended to incorporate the venue provisions of FELA and
> the rights that attached to it, and thereby obliterate ever forum selection
> clause for every employment contract between a seaman and his or her
> employer, this Court would expect Congress to offer an indication of this
> intent . . . . However, Congress expressly stated that the revisions were
> intended to effect no "substantive change," and every indication suggests
> that Congress intended for courts to continue their practice of looking to 28
> U.S.C. § 1391(c) to determine venue in suits under the Jones Act.[4] This
> intention would be contravened by interpreting the repeal of the venue
> provision as an invitation to incorporate into the Jones Act the venue
> provision of FELA and its attached "substantive rights."

2009 WL 6465288, at *5. The *Riley* court agreed with the reasoning in *Utoafili*, holding

"that FELA's venue provisions should not be read into the Jones Act." 2012 WL

245074, at *4. Earlier this year, a federal district court in the Eastern District of

Louisiana rejected an effort to find that the Jones Act should now be interpreted as

incorporating FELA's venue provision, noting that the plaintiff "cites no recent cases in

support of his argument, and ignores recent federal jurisprudence holding that FELA's

venue provisions do not apply in Jones Act cases." *Brister*, 2018 WL 746390, at *3. *See*

*also In re OSG Ship Mgmt.*, 514 S.W.3d at 343 (holding that a forum-selection provision

is enforceable under the Jones Act because the plain language of the statute indicates that

"the FELA venue provision does not apply to an action under the Jones Act"). This

Court lends its voice to the growing chorus of Courts across this country refusing to find

that FELA's venue provisions should be read into the Jones Act to make a forum-

selection clause invalid. Accordingly, the Court holds that the forum-selection clause at

---

[4] In *Pure Oil Co. v. Suarez*, 384 U.S. 202, 207 (1966), the Supreme Court held that the venue
provision in the Jones Act should be interpreted consistently with 28 U.S.C. § 1391(c), the
general venue statute.

issue in this case is valid and enforceable.  Transfer of this federal limitation liability action to the Western District of Kentucky is, therefore, appropriate.

**C.     The Forum-Selection Agreement is Supported by Consideration.**

McCoun also contends that the Venue Selection Agreement is unenforceable because it lacks consideration.  Consideration may consist of a benefit that accrues to one party or, alternatively, a detriment incurred by the other party.  *See Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991).  According to McCoun, the only possible consideration identified in the Venue Selection Agreement—Marquette's "consideration" of McCoun's employment application and "conditionally" offering him an employment opportunity—is illusory because it does not bind Marquette to do anything.  McCoun's argument falls flat because the Venue Selection Agreement specifies that in consideration for McCoun agreeing to bring a lawsuit against Marquette in federal or state court in Western Kentucky, Marquette provides McCoun with "the later payment of wages and benefits and the payment of maintenance, cure and advances against lost wages should [McCoun] suffer a work-related personal injury . . . ." Dkt. 4-1.  Marquette's payment of wages and payment of advances after the accident are sufficient consideration to make the agreement enforceable.  *See In re OSG Ship Mgmt.*, 514 S.W.3d at 339 ("employer's agreement to pay an injured seaman an advance against a future settlement or judgment in exchange for the seaman's agreement to resolve any disputes in a particular forum" constitutes sufficient consideration); *In re Gerald Harris Builder, Inc.*, 927 F.2d 1067, 1069 (8th Cir. 1991) ("Even if [one party] was only

advancing money that it would owe later, [the other party] received consideration by getting the money early."). As such, McCoun's consideration argument fails.

**D.     Marquette Has Not Waived the Venue Selection Agreement.**

McCoun next argues that Marquette's failure to file an objection to personal jurisdiction or venue in the state court lawsuit means that Marquette has waived its right to enforce the Venue Selection Agreement here.[5] This argument is wholly without merit and evidences a fundamental misunderstanding of how a federal limitation of liability action operates.

A brief explanation on how a limitation of liability action works may be helpful to provide the proper context. When a shipowner files a limitation action in federal court and deposits funds with the court's registry in the amount equal to that of the vessel and pending freight, "all claims and proceedings against the owner related to the matter in question shall cease." 46 U.S.C. § 30511. *See also* FED. R. CIV. P. SUPP. R. F(3) (a court "shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action"). That means that the underlying state court personal injury proceedings are put on hold.

The decision on whether to lift an injunction on state court proceedings is left to the discretion of the district court on a case-by-case basis. *See Lewis*, 531 U.S. at 449. A

---

[5] Marquette does not take the position that the Texas state court lacked personal jurisdiction over it or over the subject matter of the underlying personal injury lawsuit. To the contrary, Marquette fully recognizes that venue for the state court lawsuit was technically proper in Galveston County since that is where the alleged accident occurred. *See* TEX. CIV. PRAC. & REM. CODE §15.002(a)(1). Instead of claiming that venue was improper in the state court lawsuit, Marquette is simply trying to enforce a mandatory forum-selection clause selecting Kentucky as the forum of choice for the federal limitation of liability action.

district court finding inadequate protection in state court may adjudicate the merits of the claim, deciding both liability and limitation. *See id.* at 454. A district court may also dismiss the limitation claim where it finds that the vessel owner's rights will be protected in state court. *See id.* Finally, a district court may lift the stay on the state court proceeding while staying the federal limitation proceeding "so that it could act if the state court proceedings jeopardized the vessel owner's rights under the Limitation Act." *Id.* at 454 (citation omitted).

The only issue currently before the Court is whether the federal limitation of liability action should be transferred from the Southern District of Texas to the Western District of Kentucky. There is no credible argument that Marquette has waived its right to seek a transfer of this federal limitation of liability case to another district. Under Rule F(9), Marquette was required to initially file this limitation complaint in the Southern District of Texas—Galveston Division because this is the district where the underlying personal injury case was filed. But Rule F(9) expressly provides that either party can seek to transfer the case to another district. From the outset of the federal action, Marquette has steadfastly maintained that this proceeding should be sent to the Western District of Kentucky in accordance with the Venue Selection Agreement.

Although it should be obvious, this Court does not have the power to address nor decide whether the state court personal injury lawsuit is pending in the proper forum. Marquette correctly observes that there is no mechanism for a Texas state court to transfer a case to Kentucky. But that does not tell the full story. In Texas state courts, "[a] motion to dismiss is the proper procedural mechanism for enforcing a forum-

selection clause that a party to the agreement has violated in filing suit." *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App—Houston [1st Dist.] 2005, no pet.).  For whatever reason, Marquette has not sought, thus far, to dismiss the state court lawsuit on the basis that a valid forum-selection clause exists.  As a result, although the Court will transfer this case to the Western District of Kentucky, the state court personal injury lawsuit will remain pending in Galveston state court for the time being.  It will be up to the federal judge in the Western District of Kentucky to decide, at the appropriate time, if the stay on the Texas state court action should be lifted.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Marquette's Motion to Transfer Venue be GRANTED and the case TRANSFERRED to the United States District Court for the Western District of Kentucky.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 4th day of September, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE